```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS


KAZIMIERZ SZCZESNY, SR.,           )
                         Plaintiff )
                                   )
v.                                 )Civil Action No. 13-12999-PBS
                                   )
CAROLYN W. COLVIN,                 )
Acting Commissioner,               )
Social Security Administration,    )
                         Defendant )
```

### Memorandum and Order

February 11, 2015

Saris, U.S.D.J.

## I. INTRODUCTION

Plaintiff Kazimierz J. Szczesny Sr., who suffers from chronic neck and back pain and a skin rash, seeks reversal of the decision denying his application for Social Security Disability Insurance ("DBI") and Supplemental Security Income ("SSI") benefits under 42 U.S.C. § 405(g). Defendant has filed a motion to affirm the decision of the Commissioner.

After a review of the record and the briefs, the Court **DENIES** Plaintiff's motion (Docket No. 18). Defendant's motion to affirm the decision of the Commissioner (Docket No. 21) is **ALLOWED**.

## II. FACTUAL BACKGROUND

Mr. Szczesny was 53 years old when the administrative law judge (ALJ) denied his applications on September 28, 2012. R. 32. He attended four years of college in Poland before coming to the United States. R. 32. His past work experience includes a restaurant worker, a painter and a construction worker. R. 32, 47. Plaintiff claims disability due to diabetes and complications caused by a scar on his back from the surgical removal of a mole. R. 184. Plaintiff alleges disability beginning September 30, 2010. R. 180.

### A. Medical History

Plaintiff visited Manisha Thakuria, M.D., a dermatologist, on October 4, 2010, for treatment concerning a rash on his arms and legs. At the time of the visit, the rash had been "going on" for about one and a half years, and consisted of itchy pustules. R. 258. He had been seeing other doctors for the rash, which was diagnosed as prurigo nodularis, and had been prescribed oral antibiotics and oral steroids without showing improvement. Id. Dr. Thakuria, in addition to examining his rash, noted a brown spot on his back, which she was concerned could be cancerous. Id. On December 3, 2010, Dr. Thakuria surgically removed the abnormality from Plaintiff's back. R. 262. A few days after the surgery, Plaintiff reported significant and worsening pain from the scar on his back. R. 264. The wound from the surgery was

severely infected, and Dr. Thakuria excised the wound to drain the pus. R. 264. She prescribed an antibiotic, and gave Mr. Szczesny instructions for bandaging his back. R. 264.

At a subsequent visit to Dr. Thakuria on December 12, 2010, Mr. Szczesny reported that the wound on his back was improving, and that he was able to sleep well and perform normal activities. R. 274. In addition, he stated that he was no longer limited by pain from his back. Id. Although Mr. Szczesny claimed continued improvement at his visit on January 28, 2011, he reported that he was still experiencing back pain and that he had lost 50 pounds since February of 2009. R. 276. A blood test report by Michael Lichtman, M.D., in February of 2011 confirmed that Mr. Szczesny's rash was prurigo nodularis. R. 278. However, the same blood test also indicated that Mr. Szczesny was diabetic, a new diagnosis, and that this could explain his reported weight loss. Id.

In February of 2011, Mr. Szczesny also started narrowband Ultra Violet B treatment for his rash. By March 4, 2011, he continued to report that his back wound was too painful to lift anything heavy. R. 331. However, Evan Weisman, M.D., recommended that he should be able to start adding back activity slowly, and that there was no need to continue wound care. Id. On March 25, 2011, Mr. Szczesny reported that he was "ecstatic" with how well his rash was improving, due to the UVB treatment,

3

and that he was no longer scratching.  R. 309.  By April 1, 2011,
Mr. Szczesny's back wound was completely closed, with "no
evidence of infection" and "minimal tenderness".  R. 390.

After Plaintiff's scar had closed, his back continued to
cause him pain.  At a visit with Dr. Thakuria on December 16,
2011, Mr. Szczesny complained of tenderness over the scar that
worsened with exertion.  R. 397.  Because of the scar, Mr.
Szczesny reported that he was still experiencing difficulty
lifting heavy objects.  Mr. Szczesny requested steroid injections
in his back, reporting that they had helped temporarily.  Id.
Dr. Thakuria noted that the probable cause of Mr. Szczesny's
continuing pain was nerve damage, and gave him four steroid
injections and a prescription for Neurontin.  Id.  She noted that
Plaintiff's Prurigo Nodularis was "now resolved."  Id.  In
addition, she wrote a note stating that Mr. Szczesny "has a
painful scar in his back that is causing difficulty lifting heavy
objects, and therefore his ability to do his job."  R. 395.

**B.  Medical Opinions by Non-treating Physicians**

The medical opinions in this case were supplied by two State
Agency medical consultants, Thomas Phillips, M.D., and Phyllis
Sandell, M.D.  R. 53-63, 67-79.  Both doctors assessed Mr.
Szczesny based on his medical records.  Neither consultant
conducted a physical exam on Plaintiff.

Dr. Phillips found that Mr. Szczesny's diabetes mellitus,

prurigo nodularis, and the scar on his back were all nonsevere impairments. R. 56. He noted that the prurigo rash was improved with medications, and that the diabetes had not caused damage to Plaintiff's organs. Id. Dr. Phillips did not consider the scar on Mr. Szczesny's back to be a severe impairment, noting that the biopsy had been negative for cancer. R. 57. Dr. Phillips reported that Plaintiff's conditions could reasonably cause his pain and other symptoms, but that Plaintiff's claims regarding the intensity and functionally limiting effects of his symptoms were not credible. R. 56.

Dr. Sandell found that Mr. Szczesny's prurigo and atypical mole complaints added up to a severe impairment. However, she also reported that his impairments were not so severe as to keep him from engaging in substantial gainful activity within 12 months after onset. R. 71. In making this assessment, Dr. Sandell noted that Plaintiff's symptoms improved with medication. R. 70. Dr. Sandell found that Mr. Szczesny's impairments could be expected to produce his symptoms, but that his testimony regarding the intensity and limiting effects of his ailments was not credible. R. 71.

**C. Plaintiff's Testimony**

At his hearing before the ALJ, Plaintiff testified that he had been in a "tremendous amount of pain" since his surgery on December 10, 2010. R. 33. He also testified that, before his

5

surgery, there was no pain and that he was seeing the dermatologist for treatment of his rash. R. 34. He testified that, after his surgery, his back became swollen. R. 35. Plaintiff also stated that, six months after his surgery, he was still in pain. R. 36. Plaintiff said that hydrocortisone shots helped for a little while, but were not supposed to fix the problem permanently. Id. Plaintiff also testified that he could not work even with the pain shots. Id.

Plaintiff stated that multiple doctors told him that there was some accidental nerve damage from the surgery, and prescribed pills to help with nerve regrowth. R. 36-37. However, these pills did not reduce his pain at all, and he experienced back pain despite the pills and physical therapy. R. 38. Plaintiff stated that he felt "a stabbing, burning sensation" in his back, that he had trouble sleeping, and that he couldn't sit or stand for too long at a time because of the pain. R. 39. However, he also said that hydrocodone and the steroid shots in his back reduced his pain. R. 39-40.

Regarding his lifestyle, Plaintiff said that he could do "practically nothing," and that his fiancé helped him with everything. R. 41. He testified that he helped his son get ready for school in the mornings, but that he didn't drive his son to school because he could only drive short distances. R. 41-42. Plaintiff said that he was able to do normal household

6

chores like cooking, laundry, and making the bed.  R. 43.  He also testified that he went to England and Poland on a vacation with his son in July of 2012, and that they took an airplane to get there.  R. 45.

**D.  Vocational Expert's Testimony**

At Plaintiff's September 2012 hearing before the ALJ, the ALJ asked questions of a vocational expert ("VE").  The VE first testified that Plaintiff's prior work experience had been semi-skilled with a heavy or very heavy level of physical demand.  R. 47.  The ALJ then asked if there would be any work for an individual of similar age and educational background to Mr. Szczesny, but limited to only occasionally overhead reaching.  The ALJ also limited the hypothetical individual to only light work requiring a sit/stand option.  R. 47-48.  Based on this hypothetical, the VE testified that there are jobs fit for the hypothetical individual that exist in significant numbers in both the national and local economy.  R. 48.  The VE identified ticket seller, cashier, and price marker as some of the jobs available to Plaintiff.  Id.

### III.  PROCEDURAL HISTORY

Plaintiff filed applications for a period of disability and disability insurance benefits on January 21, 2011.  R. 16.  On the same day, Mr. Szczesny also filed a request for supplemental

security income.  R. 16.  Both applications alleged disability beginning September 30, 2010.  R. 16, 65.  His claims were denied on April 29, 2011, and denied again upon reconsideration on September 30, 2011.  R. 65, 66, 81, 82.  On October 19, 2011, Mr. Szczesny timely requested an administrative hearing.  R. 16.  The hearing was held by ALJ Levin on September 19, 2012.  R. 26.  Mr. Szczesny, though informed about his right to counsel, chose to represent himself at the hearing.  R. 29, 30.

The ALJ issued his decision on September 28, 2012.  R. 24.  At step one of his evaluation, the ALJ found that Mr. Szczesny had not engaged in substantial gainful activity since his claimed disability date of September 30, 2010.  R. 18.  At step two, he found that Mr. Szczesny had severe impairments of chronic neck and back pain with neuropathy resulting from his 2010 surgery, as well as a skin rash (prurigo nodularis).  R. 19.  However, he found that Mr. Szczesny's diabetes did not constitute a severe impairment.  Id.  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met the statutory definition of a disability under 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id.

Before beginning step four, the ALJ assessed Mr. Szczesny's RFC based on both his severe and non-severe impairments.  R. 20.  The ALJ found that Mr. Szczesny was able to perform light work,

provided he would be able to transition between sitting and standing at will. R. 20. Based on Mr. Szczesny's testimony, the ALJ found that Plaintiff led a "fairly active lifestyle" and was capable of carrying loads of 10-20 pounds. R. 20-21. The ALJ explained that, although Plaintiff's impairments could cause his alleged symptoms, his claims concerning the "severity of symptoms and limitations" was not consistent with the medical evidence. R. 21. Based on the evidence, the ALJ found that Plaintiff was able to perform light work as long as he could sit or stand at will, and was able to lift light weight and perform some limited overhead reaching. R. 20-21.

In making his RFC finding, the ALJ took into consideration a note written by Dr. Thakuria in 2011 that stated Plaintiff was having difficulty lifting heavy objects. R. 22, 395. However, the ALJ found that Dr. Thakuria's note was "limited and conclusory," and did not speak directly to Plaintiff's ability to work. R. 22. The ALJ gave significant weight to the opinions of Thomas Phillips, M.D., and Phyllis Sandell, M.D., the two non-examining State Agency medical consultants. R. 22. Dr. Phillips reported that Plaintiff's diabetes and rash were not severe impairments, and were improved with medications. R. 22, 57. Dr. Sandell found that Plaintiff's prorigo nodularis and dysplastic nevus were severe impairments, but that his impairments were not of such severity as to have prevented him from engaging in

9

gainful activity for twelve months.  R. 22, 71.  The ALJ noted the consistency between their findings and the overall evidence of the case, which showed few physical limitations for Mr. Szczesny.  R. 22.

At step four, the ALJ found that Mr. Szczesny was unable to perform any of his past relevant work as a painter or construction worker, based on the ALJ's RFC evaluation and the testimony of the vocational expert ("VE").  R. 23.  At step five, the ALJ relied on the VE's testimony to find that there were several jobs with significant numbers in the national economy that the Plaintiff would be able to perform.  Id.  The jobs listed by the VE that the ALJ found Plaintiff able to perform included cashier, ticket seller, and price marker.  R. 23-24.  Therefore, the ALJ submitted a decision finding Mr. Szczesny to be "not disabled."  R. 24.

On September 28, 2013, the Appeals Council denied Plaintiff's request for review, making the ALJ's September 28, 2012 judgment the Commissioner's final decision.  Mr. Szczesny now seeks judicial review of that decision under 42 U.S.C. § 405(g).

**IV. STANDARD**

Plaintiff brings this action to review the Commissioner's final decision denying his claims for DIB and SSI under sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§

405(g), 1383(c)(3). Judicial review of Social Security disability cases is limited to determining whether the Commissioner's decision was supported by substantial evidence, and whether the Commissioner applied the correct legal standard. See 42 U.S.C. § 405(g). In order for evidence to qualify as substantial, it must be "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotation omitted); see also Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).

Under the Social Security Act, a claimant seeking disability benefits must prove that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To meet this definition, the claimant must have a severe impairment that renders him unable to do his past relevant work or any other substantial gainful work that exists in the economy. 20 C.F.R. § 416.905(a).

The ALJ employs a five-step sequential evaluation process to assess a claim for disability benefits. *See* 20 C.F.R. §§ 404.1520(a)(4)(I)-(v), 404.1509. The evaluation may be concluded at any step in the process if the ALJ determines that the claimant is or is not disabled. 20 C.F.R. § 404.1520(a)(4). The

five steps are: (1) if the claimant is engaged in substantial gainful work, the application is denied; (2) if the claimant does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; if the claimant has a severe impairment, then the analysis proceeds to the next step; (3) if the impairment meets the conditions for one of the listed impairments in the Social Security regulations, then the application is granted; (4) if the applicant's residual functional capacity ("RFC") is such that he or she can still perform past relevant work, then the application is denied; and finally, (5) if the applicant, given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted. Id.; Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001). Residual functional capacity is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). A claimant's "impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what [he] can do in a work setting." Id. A claimant can adjust to other work if he can do any jobs that "exist in significant numbers in the national economy." Id.; § 404.1560(c)(1).

The claimant bears the burden of proof on steps one through four. At step five, the SSA bears the burden of proof of coming forward with evidence of specific jobs in the national economy

12

that the applicant can still perform.  Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

## V. DISCUSSION

### A. The ALJ's RFC Finding

Plaintiff argues that the ALJ's RFC finding is not supported by any medical opinion in the record, and that the ALJ erred by providing a lay assessment of the medical evidence when he concluded that Plaintiff was able to do light work.  However, the First Circuit has held that "where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment." Manso-Pizarro v. Sec'y of Health and Human Servs., 76 F.3d 15, 16 (1st Cir. 1996); see also Perez v. Sec'y of Health and Human Servs., 958 F.2d 445, 446-47 (1st Cir. 1991).  An ALJ is allowed "to piece together the relevant medical facts from the findings and opinions of multiple physicians" when determining a claimant's RFC.  Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 144 (1st Cir. 1987).  In addition, an ALJ may use "all of the relevant medical and other evidence" in his RFC determination.  20 C.F.R. § 404.1545(a)(3).  The fact that no doctor explicitly endorsed the ALJ's RFC determination does not constitute reversible error, provided that the ALJ supported his determination with

substantial evidence from medical opinions, medical records, testimony, and other evidence.

The ALJ considered three medical opinions. The ALJ gave some weight to Dr. Thakuria's December 16, 2011 note because Dr. Thakuria was Mr. Szczesny's treating physician. R. 22. The ALJ gave "significant weight" to the opinions of the State Agency medical consutants, Dr. Phillips and Dr. Sandell. Id. Dr. Thakuria's note is the most favorable to the Plaintiff, since it explains that his medical condition prevents him from lifting heavy objects. However, it mentions no restrictions on his activity other than heavy lifting – an opinion on which the ALJ expressly relied when evaluating the RFC. R. 21-22. Indeed, both State Agency medical consultants' opinions support the ALJ. R. 22. The ALJ's opinion stated that other than heavy lifting restrictions, Plaintiff had few functional limitations due to physical restrictions. It bears mention that Plaintiff provided no medical opinions, from a treating physician or any other expert, that support disability or inability to do light work; at the fourth step of ALJ's assessment, the claimant still bears the burden of production and proof. Freeman, 274 F.3d at 608.

The ALJ also found Plaintiff's medical conditions could reasonably cause his symptoms, but that his testimony regarding the intensity and limiting effects of his symptoms was not fully

14

credible. R. 21. The ALJ pointed to medical records showing that Plaintiff's back pain and prurigo both responded to treatment, and that the Plaintiff testified that some of the treatments had reduced his pain. R. 22. The ALJ also noted that Plaintiff's ability to do normal household chores and go on a trip to Poland affected his evaluation of the credibility of Plaintiff's testimony regarding the extent of his pain. R. 21. Based on that evidence, the ALJ's RFC determination that Plaintiff was able to do "light work" is supported by the medical evidence and testimony.

**B. The ALJ's Step Five Finding**

Plaintiff asserts that, since the ALJ's RFC finding was flawed, the VE's testimony does not accurately reflect the medical record. Because the hypothetical given to the VE sufficiently accounted for Plaintiff's limitations, there was substantial evidence supporting the ALJ's step five evaluation.

**C. The Borderline Age Issue**

Plaintiff also claims that the Appeals Council committed reversible error when it declined to review the ALJ's decision. At the time of the ALJ's decision, Szczesny fell squarely into the "closely approaching advanced age" category. However, by the time of the Appeals Council's decision, Szczesny was borderline between the categories of "closely approaching advanced age" and

15

"advanced age." The key issue here is whether, at the time of its decision, the Appeals Council erred in failing to consider the borderline age issue. Errors of law by the Appeals Council are generally subject to judicial review. Mills v. Apfel, 244 F.3d 1, 5 (1st Cir. 2001).

A borderline age issue exists when (1) the claimant's age is within a few months of a higher age category, and (2) use of the higher age category would result in a finding of disability.[1] Application of the Medical-Vocational Guidelines in Borderline Age Situations, Soc. Sec. Admin., Office of Hearings and Appeals, *Hearings, Appeals, and Litigation Law Manual* ("HALLEX") II-5-3-2. The two relevant age categories here are "person closely approaching advanced age," referring to a claimant between the ages of fifty and fifty-four, and "person of advanced age," referring to a claimant fifty-five years or older. 20 C.F.R. §§ 404.1563(c)-(e), 416.963(c)-(e). When determining a claimant's age category, the regulations provide that the Social Security Administration must not "apply [the] age categories mechanically in a borderline situation." 20 C.F.R. § 404.1563(b). According to the Guidelines, a borderline age issue should be considered

---

[1] Medical-Vocational Rule 202.06 states that an individual with a residual functional capacity ("RFC") limited to light work is disabled if he (1) is of advanced age; (2) is skilled or semi-skilled, and his skills are not transferable; and (3) has a high school graduate level of education or higher.

"whenever the age category changes within a few months after the alleged onset date, the date last insured (or the prescribed period), or the date of the ALJ's decision."  HALLEX II-5-3-2. See, e.g., France v. Apfel, 87 F. Supp. 2d 484, 492 (D. Md. 2000)(ALJ erred in mechanically applying regulations grid where plaintiff was of borderline age at time of ALJ's decision).

On September 28, 2012, the date of the ALJ's decision, Szczesny was fifty-three years and five months of age, placing him about one year and seven months away from entering the "advanced age" category.  R. 23.  This is more than the "few months" of difference that would create a borderline age situation.  See HALLEX II-5-3-2.  Therefore, Szczesny was not borderline at the time of the ALJ's decision, and the ALJ did not err in declining to consider the borderline issue.

However, Szczesny argues that he had moved into a borderline age situation by the time of the Appeals Council's decision. When the Appeals Council considered Szczesny's request for review in 2013, he was only seven months away from turning fifty-five. At age fifty-five, Szczesny would fall into the "advanced age" category, and the ALJ's RFC finding would qualify him as disabled under Medical-Vocational Rule 202.06.[2]  For this reason, Szczesny

---

[2] The ALJ found that Plaintiff's past work as a painter and construction worker was skilled and semi-skilled, respectively. R. 22. The ALJ also found that Plaintiff had at least a high school level of education. R. 23. If Plaintiff's age category has

17

argues that the Appeals Council should have considered whether he was borderline at the time of its decision, and that its failure to do so was reversible error.

An Appeals Council may consider new evidence submitted by a plaintiff only if it is material and "relate[d] to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. §§ 404.970(b), 416.1470(b). Because "age is determined as of the date of the [ALJ's] decision," two courts in this District have concluded that a change in age does not constitute new evidence for purposes of the Appeals Council's review. Justice v. Astrue, 589 F. Supp. 2d 110, 111 (D. Mass. 2008); Barrett v. Apfel, 40 F. Supp. 2d 31, 38 (D. Mass. 1999). "Were this not so, courts constantly would be remanding decisions as individuals aged through the appellate process." Id. at 38. See also Veach v. Comm'r, Soc. Sec. Admin., No. 1:13-CV-76-DBH, 2014 WL 35362, at *7 (D. Me. Jan. 6, 2014) (not "legal error for the Appeals Council to disregard the [age category] issue and summarily affirm the ALJ where [Plaintiff] reached borderline age and the next age category after the ALJ issued her decision"); Madrigal v. Sullivan, 777 F.Supp. 1503, 1506 (N.D. Cal. 1991)(it

---

been "advanced" at the time of the ALJ's decision, therefore, the ALJ would have deemed Plaintiff disabled under Medical-Vocational Rule 202.06.

was not legal error for the Appeals Council to deny review even if the plaintiff turned fifty before that decision" where plaintiff was not borderline at time of ALJ's decision). The defendant cites no cases to the contrary.

Here, although Szczesny may have qualified as borderline by the time of the Appeals Council's consideration, he did not so qualify when he was before the ALJ. Therefore, the Council did not err in declining to review the ALJ's decision on the basis of Szczesny's change in age.

## VI. ORDER

The Court **ALLOWS** Defendant's motion to affirm the Decision of the Commissioner (Docket No. 21) and **DENIES** the Plaintiff's motion to reverse (Docket No. 18).

/s/ PATTI B. SARIS
Patti B. Saris
Chief United States District Judge